UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                           Plaintiff,                   :     **MEMORANDUM & ORDER**
                                                        :
              -against-                                 :     07-CR-425 (S-3) (DLI)
                                                        :
O'NEAL ROBERTS                                          :
                                                        :
                           Defendant.                   :
------------------------------------------------------- X

**DORA L. IRIZARRY, United States District Judge:**

On June 24, 2009, Defendant moved under Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on the money laundering conspiracy and money laundering charges set forth in Counts Five and Six of the third superseding indictment, which was filed on June 11, 2009 (the "indictment"). For the reasons set forth more fully below, Defendant's motion is granted.

**I.   BACKGROUND**

Defendant, an American Airlines employee at John F. Kennedy airport ("JFK"), was arrested on October 11, 2006, as a result of a seizure of cocaine and a wiretap investigation by Immigration and Customs Enforcement ("ICE") agents. The indictment charges defendant with cocaine importation, cocaine importation conspiracy, cocaine distribution conspiracy, attempt to distribute cocaine, money laundering conspiracy and money laundering. A jury trial on these charges commenced on June 22, 2009. The government presented testimony, *inter alia*, from several of law enforcement officials and Mr. Clive Beckford, an alleged co-conspirator. This opinion assumes familiarity

with the procedural history of this case and the evidence presented by the government at trial.

On June 24, 2009, at the conclusion of the government's presentation of its case-in-chief, Defendant moved for a judgment of acquittal on the money laundering conspiracy and money laundering charges brought under 18 U.S.C. § 1956(a)(2)(B)(i) as set forth in Counts Five and Six.

Count Five of the indictment charges that:

> On or about and between January 1, 2003 and October 11, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant O'NEAL ROBERTS, also known as "Shabba," together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, to wit: Jamaica, knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity and that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i).

Count Six of the indictment charges that:

> On or about and between March 1, 2006 and March 2, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant O'NEAL ROBERTS, also known as "Shabba," together with others, did knowingly and intentionally transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, to wit: Jamaica, knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity and that such transportation, transmission and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity.

## II. DISCUSSION

"A conviction under Section 1956(a)(2)(B)(i) must be based on evidence that the defendant (i) attempted to transport the funds across the United States border; (ii) knew

that those funds 'represent[ed] the proceeds of some form of unlawful activity;' and (iii) knew that such transportation was designed to 'conceal or disguise the nature, the location, the source, the ownership, or the control' of the funds." *United States v. Ness*, 565 F.3d 73, 77 (2d Cir. 2009) (quoting *Cuellar v. United States*, 128 S.Ct. 1994, 2002 (2008)). The Court finds that the government has not established that Defendant knew that the alleged transportation of funds was designed to conceal or disguise the nature, the location, the source, the ownership, or the control of such funds, as it must under 18 U.S.C. § 1956(a)(2)(B)(i).

Recent precedents from the United States Supreme Court and the Second Circuit establish that "merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money." *Cuellar*, 128 S.Ct. at 1996. In *Cuellar*, the defendant was detained in southern Texas while driving towards the Mexican border. *Id*. at 1997. A search of his vehicle revealed that he was transporting currency bundled in plastic bags and duct tape and covered in animal hair in a secret compartment in the vehicle. *Id.* at 1998. During trial, the government introduced testimony that "the secretive manner of transportation was consistent with drug smuggling," the money was to be turned over to the "leadership" in Mexico, and "the Mexican border town to which petitioner was headed [] has a cash economy and that U.S. currency is widely accepted there." *Id*. at 2005. Such evidence "suggested that petitioner's transportation would have had the effect of concealing the funds," but "did not demonstrate that such concealment was the purpose of the transportation because, for instance, there was no evidence that petitioner knew about or intended the effect." *Id.* The court held that the government failed to meet its burden under

3

Section 1956(a)(2)(B)(i), which "required evidence that the defendant's purpose (in whole or in part) in transporting the funds was to conceal the nature, location source, ownership or control of the funds." *Ness*, 565 F.3d at 77 (citing *Cuellar*, 128 S.Ct. at 2005).

Similarly, in *Ness*, the Second Circuit applied *Cuellar* in a case involving "the proceeds of drug sales that were being transported to people in Europe and conmingled with jewelry and other valuables that [defendant] Ness declared to be part of his business of transporting such valuables internationally." 565 F.3d at 77. In *Ness*, the government introduced testimony by (1) the defendant's business partner that the defendant stated that he "sells confidentiality," and (2) testimony from an ecstasy trafficker who had delivered drug money to defendant's company because "he didn't want a paper trail saying anything about the money that [he] dropped off." *Id*. at 78. The Second Circuit found that although the evidence showed "how" defendant moved the money, it failed to establish "why" he moved it. *Id*. The testimonial evidence, in conjunction with evidence of defendant's "avoidance of a paper trail, hiding of the proceeds in packages of jewelry, and use of code words[,] show only that he concealed the proceeds in order to transport them." *Id*. Accordingly, the government's evidence was not sufficient to support a finding beyond a reasonable doubt that the defendant's purpose in transporting the narcotics proceeds was to conceal one or more of their attributes. *Id.*

Thus, under *Cuellar* and *Ness*, a money laundering conviction based on transportation of "requires proof that the purpose—not merely effect—of the transportation was to conceal or disguise a listed attribute" of the transported funds. *Ness*, 565 F.3d at 77 (quoting *Cuellar* 128 S.Ct. at 2003, 2005). This is because Section 1956(a)(2)(B)(i)

4

requires evidence of the defendant's knowledge of the "purpose or plan, i.e., the intended aim of the transportation." *Id.* Indeed, "[t]here is a difference between concealing something to transport it, and transporting something to conceal it; that is, *how* one moves the money is distinct from *why* one moves the money," and "[e]vidence of the former, standing alone, is not sufficient to prove the latter." *Id.* (quoting *Cuellar*, 128 S. Ct. at 2005).

Here, as in *Cuellar* and *Ness*, the evidence submitted by the government shows only an intent to conceal the transportation, not an intent to transport money in order to conceal it. The government's case-in-chief includes evidence that:

- During a telephone conversation on March 2, 2006 (recorded by the law enforcement officials pursuant to court order), Mr. Beckford told Mr. Roberts that "I have the thing." Mr. Beckford testified that in this conversation the "thing" is "the money" that Mr. Beckford obtained from alleged co-conspirator Victor Bourne, which is alleged by the government to have been transported to Jamaica in violation of the Section 1956(a)(2)(B)(i). (Trial Transcript ("Tr.") at 398:6-7; *see also id.* 399:18-20.)

- During the same telephone conversation, Mr. Roberts said to Mr. Beckford, "I'm ready." Mr. Beckford testified that this meant "[t]hat he [Mr. Roberts] will come—the time he specified he will take care of it [the money]." (*Id.* at 400:7-8.)

- Mr. Beckford and Mr. Roberts met up shortly after midnight on March 2, 2006 at JFK,[1] where Mr. Beckford gave Mr. Roberts a black plastic back containing money. (*See id.* at 398:15-23; 402:18-21; 425:10-22.) Mr. Beckford had neither counted the money nor looked inside the bag. (*Id.*)

- Mr. Beckford and Mr. Roberts approached an aircraft that was scheduled to depart to Montego Bay the next morning, and pulled a belt loader up to the airplane. (*See id.* 400:15-22; 402:9-10.)

- Using the belt loader, Mr. Roberts then entered the plane carrying the plastic bag that Mr. Beckford had given him, remained inside for "maybe about five minutes," and exited without the plastic bag. (*See id.* at 402:11-

---

[1] The government also introduced testimony from an ICE special agent, indicating that ICE officers observed Mr. Roberts arrive at and depart from JFK airport on the night in question.

404:1.) The plane departed to Montego Bay the next morning. (*See id*. at 404:2-5.)

- o   Mr. Beckford never traveled to Jamaica carrying the money on his person because "that's too risky . . . if you ever get caught with it, you have to explain how you come by so much money." (*Id*. at 404:10-16; *see also id*. at 405:25-406:2.)

- o   Mr. Beckford understood that the money that Mr. Borne gave him was "drug profits." (*Id*. at 404:17-22.)

- o   Mr. Beckford understood that the money was going to Montego Bay, where it would be retrieved by "whoever was supposed to pick it up," to "pay for the drugs or buy more drugs." (*Id.* at 404:25-16.)

The evidence adduced by the government is pertinent to a determination of "how" the money was moved—secreted in a black plastic bag, apparently surreptitiously loaded by defendant onto a Jamaica-bound flight. It does not prove that his purpose in transporting the narcotics proceeds was concealing the nature, location, or source of the proceeds. *See Ness*, 565 F.3d at 78. There is no testimony that Mr. Roberts ever looked inside the bag. Moreover, Mr. Beckford testified that, once the money reached its destination, it would be retrieved "to pay for drugs or buy more drugs." (Tr. 404:25-26). Thus, as in *Cuellar*, the evidence suggests that "the secretive aspects of the transportation were employed to *facilitate* the transportation, . . . but not necessarily that secrecy was the *purpose* of the transportation." *Cuellar*, 128 S.Ct. at 2005. Similarly, in *Ness*, the government adduced evidence that the purpose of Ness's transportation of the illicit proceeds was to transport them to other narcotics traffickers. *Ness*, 565 F.3d at 77.

To the extent that Mr. Beckford testified that he never transported the money personally to avoid having to explain how "he had come by so much money" (Tr. 404:10-16; *see also id.* at 405:25-406:2), this does not change the court's analysis that the government did not provide evidence sufficient to support a conviction on the money

6

laundering charges.  In *Cuellar*, the Supreme Court refused to affirm the defendant's conviction, even if the "same secretive aspects of the transportation also may be circumstantial evidence that the transportation itself was intended to avoid detection of the funds, because, for example, they may suggest that the transportation is only one step of a larger plan to facilitate the cross-border transportation of funds."  128 S.Ct. at 2004.  Likewise, in *Ness*, the Second Circuit found that the defendant's "scrupulous avoidance of any paper trail, his surreptitious shipment of the money by hiding it in packages of jewelry for shipment and his use of code words for delivery of the funds"—even combined with testimony "suggestive that the purpose of [defendant's] business was to conceal illegal proceeds"—were insufficient to show an intent to transport the money in order to conceal it.  565 F.3d at 78.  Here, too, the government shows only an intent to conceal the transportation, not an intent to transport in order to conceal.  It has failed to introduce any evidence that the reason that the drug smugglers move to money to Jamaica is to conceal or disguise any of the attributes of the funds listed in Section 1956(a)(2)(B)(i).

Finally, in its letter brief in support of its opposition to Defendant's motion to dismiss, the government asserts that, "since Mr. Clive Beckford, who is an alleged member of the smuggling operation, knew the purpose of the transportation, the jury can properly infer that the defendant, who is also a member of the smuggling operation, knew that purpose."  Letter from AUSA Norkin to Hon. D. L. Irizarry Opposing Defendant's Motion to Dismiss the Money Laundering Charges as to O'Neal Roberts (Dkt. # 98), at 3.  For the reasons set forth above, even assuming, without deciding, that Mr. Beckford's knowledge of the purpose of the transportation can be properly imputed to Defendant, the

government has not set forth sufficient evidence to support a conviction under Section 1956(a)(2)(B)(i).

## CONCLUSION

For the reasons set forth above, the Defendant's motion is granted in its entirety.


SO ORDERED.

Dated: Brooklyn, New York
       June 25, 2009

                                              _____/s/_____
                                              DORA L. IRIZARRY
                                              United States District Judge