```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ X
UNITED STATES OF AMERICA,                              :
                                                       :
                Plaintiff,                             :
                                                       :       MEMORANDUM & ORDER
           -against-                                   :
                                                       :       07-CR-425 (DLI)
O'NEAL ROBERTS,                                        :
                Defendant.                             :
------------------------------------------------------ X
```

**DORA L. IRIZARRY, United States District Judge:**

On July 31, 2009, following the jury's return of guilty verdicts on charges related to drug trafficking, the government moved for criminal forfeiture pursuant to 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, seeking a money judgment of $3,160,000.[1] Defendant opposes the motion, claiming that the forfeiture issue should be determined by the jury, that the government adduced no evidence that the amount sought constitutes narcotics proceeds, and that the amount sought is speculative. For the reasons set forth below, the government's motion is granted in its entirety.

**I.    BACKGROUND**

Defendant, a former American Airlines employee at John F. Kennedy airport in Queens, New York ("JFK"), was arrested on October 11, 2006, subsequent to a seizure of cocaine and a wiretap investigation by Immigration and Customs Enforcement ("ICE") agents. On June 30, 2009, the jury rendered guilty verdicts on charges of cocaine importation conspiracy, cocaine importation, cocaine distribution conspiracy, and attempt to distribute cocaine. This opinion

---

[1] As represented to the court in the forfeiture hearing on January 13, 2010 and post-hearing submissions, the government is no longer seeking a criminal forfeiture money judgment relating to narcotics seized on November 5, 2005. Accordingly, the government has revised its initial request for a judgment of $3,560,000 to $3,160,000.

assumes familiarity with the procedural history of this case and the evidence adduced at trial.[2] The court will refer only to those facts necessary to resolve the issues presented in the instant motion.

### A. Pertinent Evidence Presented at Trial

Co-conspirator Clive Beckford testified on behalf of the government that the defendant participated in the drug smuggling operation by unloading drugs and using his position as "crew chief" to assign only baggage handlers who were drug ring members to work the drug-laden flights. (Trial Transcript ("T.") at 357, 436-37.) According to Beckford, between 2003, when he began his involvement, and May 14, 2009, the date of his arrest, members of the drug smuggling operation tracked approximately twenty flights believed to be carrying drugs as they arrived from the Caribbean. (T. 358-67, 427-28.) The drugs would be retrieved from the planes upon their return to JFK as domestic flights, thus eluding detection by the custom agents who inspected the international flights. (T. 367.)

Beckford testified that the flights contained cocaine, and, on at least one occasion, marijuana, packed in gym bags in brick-shaped forms. (T. 374, 428.) He further testified that, at times, he was not sure how many bricks were in the gym bags, whereas, at other times, he was able to see the contents of the bags. (T. 375.) When he did see the bricks, Beckford said he typically saw at least four, and, at most, fifteen or more bricks (T. 374-5.) Beckford also testified that he assisted the defendant by sending money to Jamaica. (T. 398-404.) According to Beckford, this money represented "drug profits" that went to "pay for the drugs or buy more

---

[2] For detailed factual background, please see this court's order on defendant's motion for a judgment of acquittal notwithstanding the verdict under Federal Rule of Criminal Procedure 29, or a new trial pursuant to Federal Rule of Criminal Procedure 33. *United States v. Roberts*, 2010 WL 234765 (E.D.N.Y. Jan. 13, 2010).

drugs." (T. 405.) Beckford said the defendant and co-conspirator Victor Bourne paid him approximately $2,000 to $10,000 for his participation in the drug operation. (T. 370, 428.)

On November 5, 2005, U.S. Customs and Border Patrol officers seized 5.04 kilograms of cocaine from the cargo area of American Airlines Flight 1384 from Barbados, which was unloaded by defendant. (T. 301, 306, 546.) According to ICE Special Agent William Terence McAlpin, who testified as an expert in the pricing of cocaine and methods and practices of smuggling narcotics, the cocaine seized had an 84% level of purity. (T. 546.) Special Agent McAlpin indicated that, diluted to an average level of 42% purity for distribution, cocaine retailed for an average of $40 per gram for the time period 2003 to 2006. (T. 551-52.)

### B. Defendant's Admissions in Proffer Sessions with the Government

In proffer sessions with the government, the defendant admitted that, in January 2003, he assisted co-conspirator Victor Bourne with the removal of fifteen bricks of smuggled narcotics from an aircraft, and in February 2003, assisted in the removal of narcotics from another inbound flight. (Gov't Reply Br., Docket No. 129, Ex. A at 1-2.) The defendant further stated that members of the narcotics conspiracy removed thirty to forty bricks from the aircrafts two or three times a week. (*Id*. at 2.) Finally, he admitted he was compensated by Bourne for using his position as crew chief to assign only baggage handlers who were co-conspirators to work the drug flights. (Gov. Reply Br. Ex. A at 1; Ex. B. at 2.) Pursuant to the terms of the proffer agreement, the government agreed "not [to] offer in evidence any statements made by [the defendant] at the [proffer meeting] (A) in its case-in-chief or (B) at sentencing." (*See* Proffer Agmt. dated Feb. 2003 at ¶ 2). Accordingly, these proffer statements were not submitted as evidence at trial. However, the parties further agreed that the government could use any statements made by the defendant as "substantive evidence to rebut, directly or indirectly, any

3

evidence offered or elicited, or factual assertions made by or on behalf of [the defendant] at any stage of a criminal prosecution (including but not limited to detention hearing, trial or sentencing)." (*Id.* at ¶ 3.)

## II. DISCUSSION

The government seeks a forfeiture money judgment based on estimated profits from seventy-nine kilograms of cocaine. This quantity is premised on testimony from Beckford that the drug conspiracy tracked approximately twenty flights carrying drug quantities ranging from a maximum of fifteen bricks of cocaine to a minimum of four bricks of cocaine per flight. (T. 358-67, 374-75.) The government estimates that seventeen flights carried narcotics, excluding the flight from which drugs were seized on November 5, 2005, as well as one practice run and one flight that may have contained marijuana instead of cocaine. The government conservatively assumes that one flight carried fifteen bricks, and that the remaining sixteen flights each carried four bricks, each brick containing one kilogram of cocaine. It proposes valuing the cocaine at the average retail price of $40 per gram. These values yield a personal money judgment of $3,160,000, as follows:

| Number of Flights | Quantity | Retail Value | Money Judgment |
|---|---|---|---|
| 1 | 15 kilograms (15,000 grams) – Maximum amount retrieved | $40/gram | $600,000 |
| 16 | 64 kilograms (64,000 grams) – Minimum amount retrieved | $40/gram | $2,560,000 |
| 17 | 79 kilograms (84,000 grams) | | $3,160,000 |

Defendant argues that the court lacks statutory authority to enter a forfeiture money judgment, and contends that the forfeiture issue should be determined by a jury. He objects that the government failed to present any evidence that the amount sought was obtained as proceeds from the alleged violation. Defendant further maintains that the government's calculation is overly speculative because, other than Beckford's testimony, there is no evidence of: (1) any

4

wholesale or retail price negotiations regarding these alleged shipments; (2) their ultimate destination; (3) anyone inspecting these alleged shipments to determine or confirm the quantity or purity; and (4) the alleged quantity of drugs.

The government responds that the entry of criminal forfeiture money judgments has been upheld by every circuit to have examined the issue, including, most recently, the Second Circuit in *United States v. Awad*, No. 07-4483-cr (2d Cir. March 11, 2010). It urges to court to adhere to its earlier ruling that defendant does not have a right to have a jury determine a criminal forfeiture money judgment. It further argues that Beckford's testimony regarding the narcotics charges is corroborated in large part by the defendant's own admissions, and that its proposed judgment on the basis of seventy-nine kilograms of cocaine is extremely conservative in light of the defendant's proffer statements. The government also argues its proposed inferences as to the purity, quantity, and value of drugs imported on other flights are properly supported by Special Agent McAlpin's expert testimony as to the value of the drugs seized.

### A. Joint and Several Liability

Under Section 853, all defendants in a conspiracy are jointly and severally liable for the total proceeds obtained during the conspiracy. *United States v. Benevento*, 836 F.2d 129, 130 (2d Cir. 1988) (affirming imposition of joint and several liability under 21 U.S.C. § 853(a)(1) rather than limiting forfeiture to defendant's share of proceeds equivalent to his ownership interest in the criminal enterprise); *see also United States v. Stathakis*, 2008 WL 413782 (E.D.N.Y. Feb. 13, 2008) (finding that "the imposition of joint and several liability on a monetary judgment of criminal forfeiture is appropriate"); *United States v. Coleman Commercial Carrier, Inc.*, 232 F. Supp. 2d 201, 204 (S.D.N.Y. 2002) (finding that, pursuant to Section 853(a),

"[c]oconspirators are liable jointly and severally to forfeit the reasonably foreseeable proceeds of their criminal activity").

B.     **Authority to Impose a Forfeiture Money Judgment**

The government bears the burden of establishing the amount of proceeds subject to forfeiture by a preponderance of the evidence. *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007); *see also United States v. Peters*, 257 F.R.D. 377, 380 (W.D.N.Y. 2009). The forfeiture judgment sought by the government is governed by 21 U.S.C. § 853(a) and Rule 32.2 of the Federal Rules of Criminal Procedure. Under Section 853(a), if a defendant is found guilty of any narcotics offense, the government may seize the property he derived from or used in the commission of that offense. 21 U.S.C. § 853(a)(1); *see also United States v. Singh*, 390 F.3d 168, 190 (2d Cir. 2004) (finding that any individual convicted of illegal distribution of narcotics is subject to criminal penalties including forfeiture under Section 853). "Property" includes real property, and tangible or intangible personal property, including rights, privileges, interests, claims, and securities. *See* 21 U.S.C. § 853(b). The statute provides that its terms "shall be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(o).

Rule 32 provides that, after a guilty verdict on any count for which criminal forfeiture is sought, "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record . . . or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt." FED. R. CRIM. P. 32.2(b)(1)-(2).

"[W]hen 'a defendant lacks the assets to satisfy the forfeiture order at the time of sentencing, the money judgment [against the defendant] is effectively an *in personam* judgment

in the amount of the forfeiture order.'" *Awad*, slip op. at 8 (internal quotation marks and citation omitted) (rejecting defendant's argument that Section 853(a) precludes *in personam* money judgments in non-RICO criminal actions). The Second Circuit accordingly held that Section 853(a) "permits imposition of a money judgment at sentencing on a defendant who possesses no assets at the time of sentencing." *Id.* at 7; *see also Stathakis*, 2008 WL 413782 at *10 (finding that "[i]n addition to entering judgment of forfeiture against specific properties, the Court may enter a money judgment against a defendant" under Section 853(a)); *United States v. Kalish*, 2009 WL 130215, at *9 (S.D.N.Y. Jan. 13, 2009) (finding that "[d]efendant's argument that Congress has not authorized money judgments in criminal forfeiture cases is also without merit," as the government is entitled to an *in personam* judgment when a defendant lacks the assets to satisfy the forfeiture order).[3]

Citing *United States v. Surgent*, 2009 WL 2525137 (E.D.N.Y. Aug. 17, 2009), defendant argues that the court lacks statutory authority to award the government a forfeiture money judgment. In *Surgent*, the government sought a forfeiture money judgment under 18 U.S.C. § 982, which incorporates by reference the forfeiture procedures of Section 853. 2009 WL 2525137 at *3 & n.6. The defendant in that case had been convicted, after a trial by jury, of money laundering pursuant to 18 U.S.C. § 1956. The court concluded that "nothing in § 982,

---

[3] Section 853(p) "provides redress should the Government be unable to recover the directly forfeitable assets or money judgment due to an act or omission by the defendant." *Stathakis*, 2008 WL 413782 at *10. If the government cannot collect a money judgment because, for example, the property "(1) cannot be located upon the exercise of due diligence; (2) has been transferred, sold, or deposited with a third party; or (3) has been placed beyond the jurisdiction of the court, then the court can order the forfeiture of other property of the defendant up to the amount of the money judgment." *Id.*; *see also United States v. Jennings*, 2007 WL 1834651, at *2 (N.D.N.Y. Jun. 25, 2007) (finding that Section 853(p) "permits the Government to secure substitute assets to satisfy a forfeiture judgment, including a money judgment"). As the government does not seek to seize specific substitute assets, it need not satisfy the requirements of Section 853(p).

7

§ 853 or the jurisprudence of the Second Circuit" authorized the court to enter a personal money judgment at sentencing. *Id.* at \*1; *cf. United States v. Schlesinger*, 396 F. Supp. 2d 267, 271, 273 (E.D.N.Y. 2005) (awarding a criminal forfeiture money judgment under section 982). The *Surgent* court noted that, while Section 853 explicitly authorizes an order forfeiting specific property, it omits any mention of money judgments. 2009 WL 2525137 at \*6. Based on its review of other statutes, the court found that "Congress knows how to explicitly authorize and require the imposition of a personal money judgment in a forfeiture proceeding," thereby supporting an inference that its failure to do so in Section 853 was intentional rather than inadvertent. 2009 WL 2525137 at \*6.[4] The court also found that, while Rule 32.2 contemplates the use of personal money judgments in criminal forfeiture proceedings, there is no language in the rule authorizing such awards. *Id.* at \*7.

The court finds that *Surgent* is inconsistent with the Second Circuit's recent ruling in *Awad* and other precedents. *See Awad*, slip op. at 7-8; *see also United States v. Bermudez*, 413 F.3d 304, 307 (2d Cir. 2005) (affirming a forfeiture money judgment in a money laundering case "up to the amount laundered, even if [defendant] merely handled the laundered property—i.e., even if he never retained those funds and consequently never obtained profits from them"); *United States v. Fruchter,* 411 F.3d 377, 384 (2d Cir. 2005) (affirming a criminal forfeiture money judgment for the amount of illegal proceeds); *United States v. Vondette,* 352 F.3d 772,

---

[4] The court's holding in *Surgent* is based, in part, on its analysis of the USA PATRIOT Act of 2001, 21 U.S.C. § 5332(b)(4). However, as the government notes, the House Report suggests that Congress understood Section 5332(b)(4) to have codified existing case law interpreting Section 853 as allowing the entry of a personal money judgment against the defendant. (*See* Gov. Letter dated 2/17/2010, Docket No. 142.) The report indicates that, "in accordance with rule 32.2 of the Federal Rules of Criminal Procedure, the court may enter a personal money judgment against the defendant." H.R. Rep. 107-250(I) Section-by-Section Analysis (citing *United States v. Candelaria-Silva*, 166 F.3d 19 (1st Cir. 1999), which applied Section 853, in concluding that a "criminal forfeiture order may take several forms: money judgment, directly forfeitable property and substitute assets").

8

773-74 (2d Cir. 2003) (affirming a district court's conclusion that the funds in a drug defendant's Individual Retirement Account ("IRA") were subject to criminal forfeiture); *Benevento*, 836 F.2d at 130 (affirming *in personam* liability in the form of a money judgment pursuant to Section 853(a)(1)'s criminal forfeiture provision); *United States v. Robilotto*, 828 F.2d 940, 949 (2d Cir. 1987) (affirming the district court's entry of a money judgment under the RICO forfeiture provisions, and finding that, because the forfeiture at issue was an *in personam* judgment, the government was not required to trace the proceeds of the defendant's racketeering activities to specific, identifiable assets). This court is bound by the Second Circuit's holding that criminal forfeiture money judgments are authorized by Section 853(a). *Awad*, slip op. at 7-8.

In *Awad*, the Second Circuit agreed with the reasoning of other circuits that have considered the propriety of forfeiture money judgments and expressly upheld them.[5] *Awad*, slip op. at 7; *see also United States v. Vampire Nation*, 451 F.3d 189, 201-02 (3d Cir. 2006) (finding that "an *in personam* forfeiture judgment may be entered for the full amount of the criminal proceeds" under Section 853); *United States v. Candelaria-Silva,* 166 F.3d 19, 42 (1st Cir. 1999) ("[C]riminal forfeiture may take several forms . . . [including] an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense."). These courts have recognized that permitting a money judgment as part of a forfeiture order prevents "the undesirable effect of creating an incentive for an individual involved in a criminal enterprise to 'rid[] himself of his ill-gotten gains to avoid the forfeiture sanction.'" *Awad*, slip op.

---

[5] The Second Circuit thus joins the First, Third, Sixth, Seventh, Ninth, Eleventh and D.C. Circuits in finding statutory authority for the imposition of criminal forfeiture in the form of personal money judgments. *See United States v. Abdelsalam*, 311 F. App'x 832, 847 (6th Cir. 2009); *United States v. Padron*, 527 F.3d 1156, 1161 (11th Cir. 2008); *United States v. Day*, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008); *United States v. Misla-Aldarondo*, 478 F.3d 52, 74-75 (1st Cir. 2007); *United States v. Casey*, 444 F.3d 1071, 1074-77 (9th Cir. 2006); *United States v. Croce*, 209 F. App'x 208, 213 (3d Cir. 2006); *United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000). Defendant's attempt to distinguish these cases on the facts is rendered moot by *Awad*.

8 (quoting *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006)); *see also Casey,* 444 F.3d at 1074 ("Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent."). For these reasons, this court respectfully declines to follow *Surgent*, and finds, instead, that Section 853(a) and Rule 32.2 authorize the entry of a personal money judgment against defendant.

## C. Jury Determination

Rule 32.2(b)(4) expressly limits the role of the jury to an assessment of whether there is a nexus between a specific property and the crime. FED. R. CRIM. P. 32.2(b)(4). In a Summary Order entered June 20, 2009, this court denied defendant's request for a jury verdict on the forfeiture issue, finding that, because "the government is seeking a criminal forfeiture judgment, there is no nexus determination to be made by the jury." *United States v. Roberts*, 631 F. Supp. 2d 223, 226 (E.D.N.Y. 2009). Defendant asks the court to reconsider its prior ruling in light of *Surgent*, which holds that, although the court lacks statutory authority to issue an *in personam* money judgment against defendant, it can enter an order requiring the defendant to forfeit substitute property up to the value of the alleged illegal proceeds, based on a jury's determination that the government established a nexus between the substitute property and the offense for which defendant was convicted. 2009 WL 2525137 at *16-22. As this court declines to follow *Surgent* with respect to the permissibility of forfeiture money judgments, defendant's request for reconsideration is denied. The court adheres to its prior determination that, "if the government does not seek specific property, but rather a personal money judgment, the court itself determines the amount of money that the defendant will be ordered to pay." *United States v. Galestro*, 2008

WL 2783360, *11 (E.D.N.Y. July 15, 2008) (citing FED. R. CRIM. P. 32.2(b)(1)). "The defendant is not entitled to have the jury decide the amount of the forfeiture." *Id.* (citing *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005)).

### D. Defendant's Proffer Statements

Defendant argues that there is insufficient evidence for forfeiture where the government presents only uncorroborated hearsay evidence regarding a defendant's earnings from illicit activities. However, even assuming, *arguendo*, that the evidence presented at trial yields an overly speculative forfeiture calculation, at this stage in the proceedings, the court is not limited to consideration of the trial evidence. Instead, the court may consider materials adduced in advance of the forfeiture hearing held on January 13, 2010. *See Capoccia*, 503 F.3d at 116 (holding that the court may establish forfeitability of seized assets based not only on evidence adduced during his trial, but also on evidence adduced at defendant's forfeiture hearing); *United States v. Nicolo*, 597 F. Supp. 2d 342, 345 (W.D.N.Y. 2009) ("[T]he Court's determination of what, if any, property is subject to forfeiture may be based on evidence already in the record from the trial or as submitted in the sentencing proceeding.") (citing *Capoccia*, 503 F.3d at 109-10). Such evidence includes defendant's proffer statements, which support Beckford's testimony at trial and show that the government's proposed calculation is extremely conservative.

The government properly submitted defendant's proffer statements for sentencing purposes, consistent with the Second Circuit's ruling in *United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005). In *Barrow*, the court found that certain proffer statements were subject to agreements that "federal prosecutors would not use any proffer statements made by [the defendant]. . . at sentencing." *Id.* at 113. It nevertheless admitted the statements insofar as they were used "as substantive evidence to rebut any evidence offered or elicited, or factual assertions

11

made, by or on behalf of [the defendant] at any stage of a criminal prosecution (including . . . sentencing)." *Id.* at 113-14; *see also United States v. Roman*, 184 F. App'x 66, 67 (2d Cir. 2006) ("At the sentencing, the district court did not commit error (plain or otherwise) in admitting and considering Defendant's proffer statements"). Here, the statements submitted by the government in support of its reply brief directly rebut statements made by defendant in his opposition to the government's request for a forfeiture money judgment.

Defendant specifically contends that "there is no evidence of any proceeds obtained by Mr. Roberts, or anyone else, as a result of any of the alleged . . . drug importations testified to by Clive Beckford." (Def.'s Opp., Docket No. 127, at 2.) This contradicts defendant's proffer statement that he was compensated by Bourne for using his position as crew chief to assign only baggage handlers who were drug ring members to work the drug flights. (Gov. Reply Br. Ex. A at 1; Ex. B. at 2.)

Defendant further argues that there is "no evidence of anyone seeing or hearing about Mr. Roberts, or anyone else, being involved in drug transactions or any exchanges of money for drugs." (Def.'s Opp. at 4.) However, in his proffer sessions, the defendant admitted that, in January 2003, he removed fifteen packages from an aircraft, and that, in February 2003, he removed narcotics from another inbound flight. (Gov. Reply Br. Ex. A at 1-2.) He also offered his own estimate as to the quantity of drugs handled, indicating that, on average, thirty to forty bricks were retrieved from the aircrafts two or three times a week. (Gov. Reply Br. Ex. A at 1-2.) This estimate far outweighs the estimates used by the government in its calculation.

In sum, the proffer statements counter defendant's assertion that "there was no evidence that anyone ever inspected these alleged shipments to determine or confirm the quantity and purity," and that "the government's guess as to the alleged quantity of drugs is based entirely

upon Mr. Beckford's extremely vague, and uncorroborated, testimony regarding these alleged shipments." (Def.'s Opp. at 6.) The court finds that these statements properly bolster the forfeiture money judgment calculation espoused by the government.

### E. Expert Testimony

The government is not required to provide a precise calculation of the proceeds subject to forfeiture, nor must it trace the proceeds to specific assets. *United States v. Basciano*, 2007 WL 29439, at *2 (E.D.N.Y. Jan. 4, 2007) (citing *United States v. Lizza Industries, Inc.,* 775 F.2d 492, 498 (2d Cir. 1985) (construing 18 U.S.C. § 1963(a), which provides for forfeiture of all proceeds and profits derived from racketeering activity)). "Although the total amount of forfeited assets may be determined by 'conservatively estimating' the revenue regularly collected or received, the evidence of such revenue may not be overly speculative." *Id.* (quoting *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000)).

Where the government seeks a forfeiture money judgment for the amount of money obtained as proceeds of a drug offense, the court may calculate the judgment by multiplying the drug quantities by the retail or street value of the narcotics. *See Awad*, 2007 WL 3120907 at *5 (finding that the government was justified in seeking a forfeiture money judgment based on the street value of the narcotics); *see also United States v. Numisgroup Int'l Corp.*, 169 F. Supp. 2d 133, 136-37 (E.D.N.Y. 2001) (calculating forfeiture money judgment for mail fraud based on the value of property used or intended to be used to commit, facilitate, or promote the commission of the offense). Its calculation may be based on evidence already in the record. *See Capoccia*, 503 F.3d at 109-10 (finding that the court can consider trial evidence, including agent's testimony, in determining forfeiture); *Schlesinger*, 396 F. Supp. 2d at 271 (E.D.N.Y. 2005) (it is permissible for the court to determine the about of the money judgment based on evidence in the record of

the criminal trial); *Stathakis*, 2008 WL 413782 at *10 (to determine amount of money judgment, the court can rely on evidence admitted at trial and the forfeiture hearing).

Defendant's objection that "there was no evidence of any wholesale or retail price negotiation regarding these alleged shipments" is unavailing. (Def.'s Opp. at 6.) Special Agent McAlpin's testimony regarding the average purity level and retail value of a gram of cocaine in New York City was not limited to November 25, 2005, when the drugs were seized, but rather encompassed the entire time frame of the charged offenses, from 2003 to 2006. (T. 550-52.) The agent described $40 per gram of cocaine as a "conservative bench mark for that period." (T. 552.)

The court is similarly unpersuaded by defendant's argument that the government did not introduce evidence regarding the ultimate destination of these alleged shipments. Special Agent McAlpin testified that the amount seized on November 5, 2005—5.04 kilograms of cocaine—indicated that the defendant and others intended to distribute the drugs. (T. 552.) His testimony was based not only on the purity of the cocaine seized, but also on his expert opinion that "most personal users aren't really willing to keep that amount of cocaine or close by for obvious reasons. They're content to just take their small dose, usually a gram or [] less[,] use it, and if they need more come back to the source and get more." (*Id*.) He found that the purity of the seized shipment also indicated

> the sophistication of the organization actually districting [*sic*] and processing the drugs. . . in that once the narcotic is sent from where it is produced at that high a purity level, the organization has to make sure that it reaches its destination, because the profit loss would be significant. The way they do this is to make sure that at every step of the transportation distribution process, that it's closely supervised and it is in the hands of people who have done this before, and have been successful in getting the drugs into the United States.

(T. 553.) The government also presented evidence that the drugs generated profits, some of which went to "pay for the drugs or buy more drugs," and some of which was used to compensate the participants in the drug ring. (T. 370, 405, 428.)

Finally, the court has already rejected defendant's argument under *United States v. Martinez-Sandoval*, 2003 WL 1442454, at *5 (S.D.N.Y. Mar. 6, 2003), that there was insufficient evidence to conclude that any of the alleged drug shipments contained any drugs at all. *See generally United States v. Roberts,* 2010 WL 234765 (E.D.N.Y. Jan. 13, 2010). Most importantly, Beckford testified that the defendant and Bourne told him that the smuggled packages contained cocaine. (T. 431-32.) Such testimony supports defendant's conviction on the drug charges and the government's request for a personal money judgment.

## CONCLUSION

For the reasons set forth above, the court finds that the government's conservative calculations, based on multiplying drug quantities by the retail or street value of the narcotics, support a personal money judgment against the defendant of $3,160,000.

SO ORDERED.

Dated: Brooklyn, New York
       March 11, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge